JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: (602) 382-2700

SUSAN E. ANDERSON
State Bar # 020343
Asst. Federal Public Defender
Attorney for Defendant
susan_anderson@fd.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Nicholas James Crook,<br><br>　　　　Defendant. | No.  CR-09-019-PHX-JAT<br><br>**MOTION TO SUPPRESS STATEMENTS** |

Nicholas Crook, through undersigned counsel, respectfully moves this Court to suppress his statements based on a <u>Miranda</u> violation.  This motion is made pursuant to the Fifth Amendment to the United States Constitution and Federal Rule of Criminal Procedure 12(b)(3).   This motion is supported by the following Memorandum of Points and Authorities and will be supplemented by testimony at the evidentiary hearing.

It is expected that excludable delay under 18 U.S.C. § 3161(h)(8)(A) and (h)(1)(F) may result from this motion or from an order based thereon.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Factual Background**

The Government alleges that slightly after midnight on September 16, 2008, Nicholas Crook willfully interfered with the operation of a Phoenix Police Department helicopter that was in flight, by shining a laser pointer at the

1    helicopter from the address of 2144 West Rancho Drive in Phoenix.

2        After the laser beam purportedly shone in the cockpit, the helicopter

3    pilots directed officers on the ground to the address of 2144 West Rancho Drive,

4    which they had determined was the source of the laser.  When Phoenix police

5    officers Charles Puma and Jacob Rasmussen arrived at the address, they

6    confronted two men sitting in chairs on the front porch, one of whom was Mr.

7    Crook.  According to police reports, Officer Puma asked which of them had shined

8    the laser pointer into the sky at the helicopter, and Mr. Crook admitted that it was

9    him.  Officer Puma then arrested Mr. Crook, placing him in handcuffs behind his

10   back.  According to Officer Puma, he read Mr. Crook his <u>Miranda</u> warnings a few

11   minutes after he arrested him, and then asked where the laser pointer was located.

12   Mr. Crook stated that it was under the chair cushion.  A search of Mr. Crook

13   turned up a silver tube in his pants pocket, which Mr. Crook stated was placed

14   over the laser pointer to make the beam wider.  According to Officer Puma, he and

15   Sergeant Lake then conducted a taped interview with Mr. Crook, during which he

16   made incriminating statements about his use of the laser pointer.

17        Mr. Crook recalls that he was arrested, handcuffed, and then

18   questioned, without <u>Miranda</u> warnings.  After this initial questioning, during

19   which he made incriminatory statements regarding his use of the laser pointer, he

20   was placed into a patrol car.  Officers then went to speak with the other male

21   subject who had been sitting on the porch – Henry Prochaska.  After the police

22   spoke with Mr. Prochaska, they came back to Mr. Crook, took him from the patrol

23   car, read him <u>Miranda</u> warnings for the first time, and then continued their

24   questioning of him.  This second interrogation was apparently audio taped.

25

26

27

28                                      2

**II.     Mr. Crook's Statements Were Taken in Violation of <u>Miranda</u>**

          Before interrogating an in-custody suspect, the police must first advise him of his constitutional rights.  <u>Dickerson v. United States</u>, 530 U.S. 428 (2000); <u>Miranda v. Arizona</u>, 384 U.S. 436, 444-45 (1966).  Interrogation consists of "express questioning or its equivalent."  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980).  "Custody" involves the deprivation of "freedom of action in any significant way."  <u>Miranda</u>, 384 U.S. at 479.  In determining whether a person is in custody, the Court should look at the totality of the circumstances to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave.  <u>Thompson v. Keohane</u>, 516 U.S. 99, 112 (1995).

          If law enforcement fails to advise a custodial suspect of his <u>Miranda</u> rights or fails to secure a knowing, intelligent or voluntary waiver of those rights, statements made by the suspect are not admissible in evidence.  <u>United States v. Binder</u>, 769 F.2d 595, 599 (9th Cir. 1985).  In assessing the validity of a waiver, the Court must analyze the totality of the circumstances, including the suspect's "background, experience, and conduct."  <u>United States v. Bernard S.</u>, 795 F.2d 749, 751 (9th Cir. 1986).  This includes an assessment of the suspect's mental condition.  <u>United States v. Doe</u>, 155 F.3d 1070, 1075 (9th Cir. 1998) (holding waiver valid but acknowledging mental condition is a factor).  There is a presumption against waiver, and the burden is on the government to prove a valid waiver by a preponderance of the evidence.  <u>United States v. Garibay</u>, 143 F.3d 534, 536 (9th Cir. 1998).  This requires a showing "that the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it.'"  <u>Id.</u> (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).  "The government's burden to make such a showing 'is great,' and the court will 'indulge every reasonable presumption against waiver of fundamental

3

constitutional rights.'"  Id.  (quoting United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984)).

Where law enforcement engages in a two-step interrogation process, where a deliberately unwarned statement is taken and then followed by Miranda warnings and a repetition of the statement already given, the warned statement may be subject to exclusion at trial along with the unwarned statement.  Missouri v. Seibert, 542 U.S. 600 (2004) (plurality opinion); United States v. Williams, 435 F.3d 1148, 1157 (9th Cir. 2006) (holding that "a trial court must suppress post-warning confessions obtained during a deliberate two-step interrogation where the midstream Miranda warning–in light of the objective facts and circumstances–did not effectively apprise the suspect of his rights").

In determining whether the two-step strategy was employed deliberately, the trial court "should consider any objective evidence or available expressions of subjective intent suggesting that the officer acted deliberately to undermine and obscure the warning's meaning and effect."  Williams, 435 F.3d at 1160.  Deliberateness may be inferred from subjective evidence, "such as an officer's testimony," or by objective evidence, such as "the timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre-and postwarning statements."  Id. at 1159. The Williams court noted that once a suspect is detained and subjected to interrogation, "there is rarely, if ever, a legitimate reason to delay giving a Miranda warning until after the suspect has confessed."  Id.  Thus, "the officer's deferral of the warning until after a suspect's incriminating response further supports an inference of deliberateness."  Id.

In evaluating the effectiveness of the midstream Miranda warning in adequately apprising the suspect that he had a "genuine choice" as to whether to

4

1   repeat his earlier admission, the trial court should consider "(1) the completeness

2   and detail of the prewarning interrogation, (2) the overlapping content of the two

3   rounds of interrogation, (3) the timing and circumstances of both interrogations,

4   (4) the continuity of police personnel, (5) the extent to which the interrogator's

5   questions treated the second round of interrogation as continuous with the first and

6   (6) whether any curative measures were taken." Williams, 435 F.3d at 1160

7   (citing Seibert, 542 U.S. at 615 (plurality opinion)).  A curative measure, for

8   example, may include an additional warning explaining that the earlier, unwarned

9   statement could not be used against the suspect. Id. at 1161.  A "substantial break

10  in time and circumstances" may also be curative.  Id. (citation and internal

11  quotations omitted).

12          Here, the two-step questioning of Mr. Crook while he was in custody

13  at the scene of his arrest was objectively deliberate and unremedied.  The content

14  of his pre- and postwarning statements was substantially similar.  The same police

15  officer was involved in both interrogations.  Both interrogations occurred at the

16  scene while Mr. Crook was in handcuffs and in or near a patrol car.  Very little

17  time had elapsed between the interrogations.  And Mr. Crook was not told that his

18  earlier, unwarned statements could not be used against him.  Under all of these

19  circumstances, Mr. Crook's pre- and postwarning statements made at the scene of

20  his arrest should be suppressed from use at trial.

21  **III.    Conclusion**

22          For all of the foregoing reasons, the Court should suppress the

23  inculpatory statements purportedly made by Mr. Crook at the scene of his arrest.

24

25

26

27

28                                          5

Respectfully submitted:  July 1, 2009.

JON M. SANDS
Federal Public Defender

 s/ *Susan E. Anderson*
SUSAN E. ANDERSON
Asst. Federal Public Defender

I hereby certify that on *July 1, 2009*, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal to the following ECF registrants:

**CLERK'S OFFICE**
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

**JOHN BOYLE**
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to:

**NICHOLAS JAMES CROOK**
Defendant

 s/ *sea*

6